

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00233-CV

---

CORY M. JONES, APPELLANT

V.

LETICIA A. URIBE, APPELLEE

---

On Appeal from the 438th Judicial District Court
Bexar County, Texas
Trial Court No. 2018-CI-07404, Honorable John D. Gabriel, Jr., Presiding

---

June 27, 2024

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In a classic trick, a magician places a housecat in a large cage, seals it, and covers with a cape. After uttering a mysterious phrase, the magician unveils a roaring tiger. The conceit of surprise is central to the art of illusion, where an initial setup appears to lead to an impossible result.

In litigation, the goal is to uncover the truth not to conceal it. Legally speaking, before one pulls a rabbit from a hat, litigants should present enough information to

reasonably reveal where one might find a rabbit. Transparency prevails over misdirection. When seeking a default judgment, a claimant should, at minimum, notify the defendant what is being sought.

In this child support appeal, where a turnover order arises out of a "default judgment," we review whether the district court erred in granting a turnover order, appointing a receiver, and awarding substantial attorney fees to the "judgment creditor" in pursuit of child support. We declare portions of the judgment and turnover order to be firm, but reverse portions of the attorney's fees awards and characterizations.

**Background**

With apologies to magicians everywhere, we reveal how the Appellee, Uribe, attempted the trick of transforming Family Code's Chapter 158 process for withholding income to a method for obtaining a court-ordered default judgment for a child support arrearage and award of attorney's fees. Uribe was once married to Jones, the Appellant, and they were divorced on March 12, 2019, by a final decree. Both parents were appointed joint managing conservators for their child, with Uribe having the right to determine the child's primary residence and to receive child support. Jones was initially ordered to provide support of $400 per month in child support, plus $25.00 in cash medical support, through the Texas Office of the Attorney General. An income order was signed, directing Jones' employer to deduct support payments from his disposable earnings.

The decree included a cumulative child support arrears judgment "against . . . Jones and in favor of the Office of the Attorney General" in the amount of $5,233.43, plus

2

interest,[1] "payable to the Office of the Attorney General," and "through the state disbursement Unit" in San Antonio, with payment then to be remitted to Uribe.

Jones did not pay the child support arrearage. Uribe is an employee and client of the Sinkin Law Firm, a firm specializing in child support debt collection services.[2] On March 5, 2020, Uribe, via the Sinkin Firm, filed a verified "Notice of Application for Judicial Writ of Withholding" with the district clerk, informing Jones that his employer would be required to withhold amounts for current support and the amount in arrearage ("$5,604.12 as of February 24, 2020."). In other words, the new amount to be withheld from Jones' wages would be $925.00 per month, subject to a cap of 50% of Jones' net disposable earnings.

Jones was informed that if he did not contest the notice within ten days, "your employer will be notified to begin deducting from your pay the amounts specified . . . ." The notice additionally stated:

> Any Writ or Order issued as a result of this proceeding shall include a determination of arrears, attorney's fees and court costs and shall apply to your current or to any subsequent employer or period of employment.
>
> If you claim that you are not the person who owes the child support, or that you are not in arrears, or that the arrears are not as much as listed on this Notice, you can request a hearing pursuant to Texas Family Code § 158.307, a copy of which is attached.

The notice was accompanied by portions of Chapter 158 of the Texas Family Code.

---

[1] The court also rendered an unpaid medical support judgment of $227.64 "against . . . Jones and in favor of the Office of the Attorney General . . . ."

[2] Testimony presented in the Spring of 2023 suggests that Uribe does not personally incur or pay attorney's fees. Uribe has never paid fees out of her pocket; she only forwards the fees collected from Jones.

Jones did not take any action. One year after the notice (on March 15, 2021), the Sinkin Firm submitted a "Judicial Writ of Income Withholding," which the clerk signed. The writ instructed Jones' employer to withhold income and to remit payments to the "Texas Child Support Disbursement Unit" in San Antonio. For the first time, the employer was instructed to make payments "payable to Leticia A. Uribe and the Sinkin Law Firm . . . ."

On March 17, 2021, the Sinkin Law Firm filed an "Exhibit on Legal Fees," showing the time spent preparing notices and the district clerk's writ. The exhibit referred to "prepar[ing] default judgment and related documents" during the same period. That day, the Sinkin Firm presented an "Order on Arrears," *ex parte*, to the district court. The court signed the order, reciting that because Jones did not respond to the March 2020 notice of application for judicial writ of withholding:

> IT IS ORDERED that . . . Uribe is granted and rendered an order for child support arrearages, including accrued interest against . . . Jones in the amount of $5,604.12 as of February 24, 2020, the date of rendition of this judgment, such *judgment* bearing interest at 6 percent simple interest per year until the date the *judgment* is paid, and is rendered on $5,604.12 as of February 24, 2020.

(emphasis and alteration added). The order also purported to grant a "judgment" of $5,812.50 in attorney's fees to "Steven A. Sinkin at the Sinkin Law Firm;"[3] it also awards conditional attorney's fees ("in favor of Steven A. Sinkin and the Sinkin Law Firm") in the event Jones brings an unsuccessful challenge to the order or in the event of Jones' bankruptcy.

---

[3] The order provides, "The attorneys may enforce this order for fees in the attorneys' own name and utilize all child support enforcement remedies for the collection of these attorney's fees."

4

The appellate record does not indicate that anyone received notice of the Order on Arrears until August 2021, when the Attorney General filed suit to clarify and modify the order, alleging Jones had paid more than $16,000 in support and only owed around $1,900 in arrearages and $300 in medical support.

The trial court set a hearing for August 26, 2021. Three days before, Jones' counsel wrote a letter to the Sinkin Firm regarding an agreement "by all parties" to pass on the hearing, stating in relevant part:

> In no event will any hearing be set sooner than 30 days after the financial information required by Rule 194 is provided by Cory Michael Jones.
>
> Pursuant to Rule 11, T.R.C.P, if the foregoing correctly reflects our agreement, please sign and date this letter below and return it to me, and I will file it with the court.

Uribe's attorney signed the agreement the same day, and it was filed with the court.

For the next seventeen months, there was little activity until January 18, 2023, when the Sinkin Firm filed an "Application for Turnover Relief"[4] pursuant to TEX. CIV. PRAC. & REM. CODE § 31.002. The application alleged that Uribe had recovered a "judgment" against Jones which remained unsatisfied. Again, the Sinkin Firm presented a proposed order *ex parte*; again, the court signed it.

During the *ex parte* hearing, Uribe testified that the judgment she was referring to was the March 2021 Order on Arrears:

> Q [by her counsel]: And did [Jones] fail to pay you child support as he was ordered to?

---

[4] The application was served on Jones' attorney and the OAG.

A [by Uribe]:  Yes.

Q:  And did you get a judgment in 2021 against him for him to pay child support?

A:  Yes.

Q:  Okay.  This is Exhibit 2, the Order on Arrears.  Have you seen this before?

A:  Yes.

Q:  Is *this* a true and accurate copy of your child support judgment?

A:  Yes.

(emphasis added).  The signed order found Uribe to be a "judgment creditor" and Jones to be a "judgment debtor."  The court appointed a receiver over Jones' non-exempt property and required him to turn over funds and income (including sums on deposit and in retirement accounts) and all non-exempt property in his possession or subject to his control.

Uribe's application requested an award of attorney's fees and conditional fees under Texas Civil Practice & Remedies Code § 31.002(e).  The court granted fees of $6,562.50, along with conditional attorney's fees, and found them to constitute additional child support.  The order enjoined Jones from transferring any non-exempt property "unless and until the unpaid child support, arrearages, attorneys' fees and costs have been satisfied."

Jones filed a motion to vacate, reform, or modify the turnover order on February 1, 2023, and Uribe responded, largely restating allegations in her original application.  Uribe also sought supplemental turnover relief.  After a hearing throughout March and April 2023, the court signed an order on April 26, 2023, that granted modified relief (essentially

6

ordering Jones to pay more in attorney's fees). Jones filed a notice of appeal on May 25, 2023.

**Analysis**

We review the trial court's decision on an application for a turnover order for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (*citing Buttles v. Navarro*, 766 S.W.2d 893, 895 (Tex. App.—San Antonio 1989, no writ)). Jones presents thirteen issues on appeal; many are premised on the position that the March 2021 Order on Arrears undergirding the basis for turnover relief is "void." We therefore begin with the Order on Arrears.

Is the Order on Arrears Subject to Collateral Attack?

We begin with the March 2021 process by which Uribe, purportedly using the notice language and process for obtaining a nonjudicial withholding of Jones' wages, obtained a court-signed "Order on Arrears" that grants a judgment to Uribe and her attorneys. Jones, did not contest the Order on Arrears by any timely appeal or other challenge. His attorney told the trial court during the turnover hearing that he did not intend to attack that order. Typically, such a delay of time would divest our Court of jurisdiction to review the complaint. *See Effner v. Moore*, No. 04-01-00294-CV, 2002 Tex. App. LEXIS 1449, at *1 (Tex. App.—San Antonio Feb. 27, 2002, no pet.).[5]

---

[5] As a court receiving this appeal from the Fourth Court of Appeals, we are bound by the Fourth Court's precedent, as well as that of the Supreme Court of Texas, consistent with principles of *stare decisis*. *See* TEX. R. APP. P. 41.3; *Mitschke v. Borromeo*, 645 S.W.3d 251, 258 (Tex. 2022).

7

On appeal, however, Jones contends the Order on Arrears is "void." This requires him to show (1) the trial court lacked jurisdiction over the subject matter or the parties, and (2) that no pleading supports the relief granted in the judgment. *Weems v. Masterson*, 80 Tex. 45, 55, 15 S.W. 590, 592–93 (1891); *Kendall & Harcourt v. Mather*, 48 Tex. 585, 598 (1878); *Carter v. G & L Tool Co. of Utah, Inc.*, 428 S.W.2d 677, 682 (Tex. App.—San Antonio 1968, no writ).

Despite our reservations about Uribe's using a process intended for "the *nonjudicial* determination of arrears and initiation of withholding"[6] to somehow transmogrify into a *judgment*,[7] the question before us is whether the trial court possessed jurisdiction to sign such an order. There is no question the court possessed such authority, at least as between Uribe and Jones, who are parties over whom it had jurisdiction. When it signed the divorce decree, the trial court retained jurisdiction to award a judgment on the child support arrearage and a medical support arrearage "until all current support, medical support, dental support, and child support arrearages, including interest and any applicable fees and costs, have been paid." TEX. FAM. CODE

---

[6] TEX. FAM. CODE ANN. § 101.0201.

[7] Per TEX. R. CIV. P. 301, judgments must be supported by pleadings and should not grant relief beyond what is specifically sought, in the absence of trial by consent. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979). This principle ensures a process whereby the defendant/obligor can make an informed decision about whether to contest (or concede) the allegations against him. *See Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986) (setting aside default judgment in the amount of $65,421.32 when the pleadings served on defendant asked an award of $59,671.32).

There should be no debate the Chapter 158 notice failed to apprise Jones that Uribe was seeking the relief granted in the Order on Arrears. The notice expressly states that if Jones did not timely contest the application, "your employer will be notified to begin deducting from your pay the amounts specified . . . ." No other relief was mentioned, certainly not a judgment ordered by a court. Moreover, although the notice vaguely refers to "a determination of arrears, attorney's fees and court costs," nothing informed Jones that Uribe would be seeking attorney's fees *against him*. Finally, nothing requested that the court modify the decree of divorce so Uribe could supplant the Office of the Attorney General as the party entitled to receive child support payments. As to the last problem, Uribe attempts to divert attention away from her pleading problem by recharacterizing the issue as pertaining to "standing."

ANN. § 157.269. Therefore, without regard to any error of the trial court, the portion of the Order on Arrears that granted relief to Uribe is not void or subject to collateral attack.[8] *Weems,* 80 Tex. at 55; *Mather*, 48 Tex. at 598; *Carter*, 428 S.W.2d at 682. We overrule this portion of Jones' appellate issues.

However, we reach a different result for the portion of the Order on Arrears granting a "judgment" to the Sinkin Law Firm (a non-party to the divorce and a non-creditor of Jones'). We hold the court lacked both jurisdiction and supporting pleadings to grant attorney's fees to the firm; the attorney fee portion of the Order on Arrears is thus void. *See Douthit v. Anderson*, 521 S.W.2d 127, 129 (Tex. App.—Dallas 1975, no writ) (holding that attorney of client in family law dispute was not a party, had filed no pleading in attorney's name, and therefore was not entitled to recover judgment for fees in attorney's name). As the Dallas Court explained in that case:

> A person is not bound by a judgment except to the extent he, or someone representing him, had adequate opportunity, not only to litigate the matters adjudicated, but to litigate them against the party who seeks to use the judgment against him. Consequently, the court's power to render judgment is limited by pleadings, and a judgment unsupported by pleadings is void.

*Id.* at 128–29. Because the court did not possess jurisdiction to render a judgment in favor of Uribe's attorneys, the portion of the Order on Arrears granting a judgment of $5,812.50 in attorney's fees to Steven A. Sinkin at the Sinkin Law Firm is void, as is the judgment for conditional attorney's fees to that firm.

---

[8] We also hold the Order did not become moot due to Appellant's failure to timely file a motion to stay.

9

<u>Did the Trial Court Err in Granting Turnover Relief?</u>

Under section 31.002 (a) and (b) of the Texas Civil Practice and Remedies Code, a judgment creditor is entitled to assistance from a court with jurisdiction "through injunction or other means in order to reach property to obtain satisfaction on the judgment," so long as the judgment debtor owns property that is not exempt from recovery. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002. This permits the court to (1) order via turnover nonexempt property and related records that are in the judgment debtor's possession or subject to his control; (2) apply recovered property to satisfy the judgment; or (3) appoint a receiver with authority to sell the judgment debtor's property and apply the proceeds to the outstanding judgment. *Id.* Jones argues the turnover order is invalid because (1) the Order on Arrears (which awarded a child support "judgment") cannot be enforced via turnover relief because it is neither a cumulative child support judgment nor a retroactive child support judgment;[9] and (2) only the Attorney General possessed the right to enforce Jones' child support obligations. We overrule both issues for the reasons set forth below.

Section 157.264 provides that a money judgment rendered under Subchapter F[10] or for retroactive child support under Chapter 154 "may" be enforced by any means available to enforce a child support judgment. The gist of Jones' argument seems to be that child support obligations obtained via other portions of the Family Code cannot be enforced through turnover. We find no support for Jones' position, and he refers us to

---

[9] Jones alternatively argues the decree of divorce cannot be enforced through turnover. Because the record testimony reveals that the Order on Arrears was the intended "judgment" through which Uribe sought turnover relief, it is unnecessary to consider this argument.

[10] "This subchapter" consists of sections 157.261 through 157.269 of the Family Code.

none.  When we construe a statute, our goal is "to effectuate the Legislature's intent by 'giv[ing] effect to every word, clause, and sentence.'"  *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 689–90 (Tex. 2020) (*quoting First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008)).  Because we presume the Legislature chose its language deliberately and purposefully, including the words it did not use, we are cautious not to interpret a statute's silence in a way that would undermine its purpose.  *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) (internal citations omitted).

Under the Code Construction Act, the term "may" is intended to "create[] discretionary authority or grant[] permission or a power."  TEX. GOV'T CODE ANN. § 311.016(1).  Conversely, the Legislature uses "may not" or "shall not" when it intends to communicate a prohibition.  *Id.* (5).  *See also U.S. Bank v. Moss*, 644 S.W.3d 130, 133 and n.2 (Tex. 2022); *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 391 (Tex. 2020).  Although Family Code section 157.264(a) discusses how money judgments rendered as provided in Subchapter F "may" be enforced, no part of the Family Code states when such remedies *may not* be used.  Moreover, Jones' proposed construction would require that we read in exceptions into sections 31.002 and 31.0025 of the Civil Practice and Remedies Code for when turnover relief is proper.[11]  Our job is to "rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose."  *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 87 (Tex. 2017).  We overrule Jones' issue.

---

[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 31.002(f) (prohibiting a court from entering or enforcing an order requiring the turnover of exempt property); 31.0025 (a-b) (prohibiting a court from entering or enforcing an order requiring the turnover of wages before they are paid to the judgment debtor).

11

Next, we address Appellant's argument that Uribe is not a judgment creditor because the decree awarded the Attorney General with the power to enforce Jones' obligations. Black's Law Dictionary defines a "judgment creditor" as "[a] person having a legal right to enforce execution of a judgment for a specific sum of money." While the decree originally gave the Attorney General the right to enforce Jones' child support obligations, the March 2021 Order on Arrears made Uribe a creditor. For the same reasons that we rejected Jones' collateral attack above we do so here, as well, regardless of the merits of Jones' substantive argument. We overrule Jones' issue.

Did the Court Err in Ordering Turnover Order-Related Attorney's Fees to Be Enforced As Child Support?

Uribe's application for turnover sought attorney's fees pursuant to the turnover statute. Section 31.002(e) of the Civil Practice and Remedies Code allows a judgment creditor to "recover reasonable costs, including attorney's fees." Uribe did not seek fees under any other statute, including the Family Code. Nevertheless, the court ordered such fees to be enforced as child support.[12] We agree with Jones that the trial court erred in this decision.

"Any award of fees is limited by the wording of the statute or contract that creates an exception to the American Rule." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019). Therefore, a party requesting fees is bound by the statutory provision she pleads. *See Turner v. Williams*, No. 01-17-00494-CV, 2019 WL 922057, at

---

[12] Permitting an obligee to enforce and recover fees as child support (as opposed to treating them as an ordinary debt) "is significant." *Tucker v. Thomas*, 419 S.W.3d 292, 297 (Tex. 2013). Courts ordinarily may not jail judgment debtors for failing to pay debt, but fees enforced as child support may be enforced under a court's contempt power. *Id.*

*11 (Tex. App.—Houston [1st Dist.] Feb. 26, 2019, no pet.) (citing *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 659 (Tex. 2009) (holding that party waived its right to recover attorney's fees under a contractual provision by pleading for attorney's fees only under a statutory provision); *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 61–62 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that party could not recover attorney's fees under contractual provision when it pleaded for attorney's fees only under statutory provision). Relevant here, awards of fees to be enforced as child support rely on section 157.167(a) of the Family Code, which looks to whether fees and costs are ordered under Subchapter D ("Hearing and Enforcement Order[s]").

Uribe argues that Jones owed a child support debt, so her efforts to recover them should be covered by section 157.167 remedy. We disagree. First, Uribe's turnover application was expressly brought pursuant to the Civil Practice and Remedies Code, not the Family Code. When an applicant does not seek child support enforcement under Chapter 157, a trial court errs in awarding resulting attorney's fees as child support. *See Tucker*, 419 S.W.3d at 300.

Second, Uribe's efforts to obtain the underlying child support "judgment" (the Order on Arrears) were not brought pursuant to Chapter 157's enforcement procedures, but under Chapter 158 of the Family Code. Uribe's notice sought a "*nonjudicial* determination of arrears and initiation of withholding." Tex. Fam. Code Ann. § 101.0201 (emphasis

13

added).  Although she bypassed the statute by obtaining a court-signed *judgment*, her original notice remained under Chapter 158.[13]

Just as rain falls on both the just and the unjust, so does the preclusive effect of a final judgment.[14]  We will not allow Uribe to argue on the one hand that Jones is bound from challenging the Order on Arrears but allow her to simultaneously recast the suit she successfully brought as for something else.  *See In re Daredia*, 317 S.W.3d 247, 250 (Tex. 2010) (holding that final judgments, once rendered, constrain movants from reframing their pleadings).  Although we uphold the amount of the turnover order's attorney's fees (and conditional fees) for the reasons described below, we hold that such fees do not satisfy section 157.167's provisions for being enforced as child support.  We accordingly sustain Jones' issue on that question.

Remaining Issues

Jones has raised additional issues on appeal, which we overrule for the reasons stated below.

Issue Five: Jones argues that because he and Uribe had agreed to a cumulative child support arrears judgment of $5,233.43 in the Final Divorce Decree, section

---

[13] Substantively, the law demands that we construe Uribe's notice of application as under Chapter 158.  As indicated by its title, a notice of application for child support withholding – brought pursuant to Chapter 158 – is intended to provide a process whereby *earnings* can be *withheld* to satisfy an obligor's child support obligations.   *See*, e.g., Tex. Fam. Code Ann. § 158.001 ("shall order that income be withheld from the disposable earnings of the obligor as provided by this chapter"); 158.002 (permitting court's "order withholding income" to be conditioned on threshold events, such as amount of time of arrearage); 158.003 (providing for "income [] withheld from the disposable earnings of the obligor" to satisfy child support arrearages and interest, subject to limitation); 158.004 (enabling court or Title IV-D agency to order "that income be withheld for arrearages" when current support is no longer owed).

[14] *See* Holy Bible, Matthew 5:45.

157.164(a) does not permit the Order on Arrears which serves as the judgment underlying the turnover order. This argument was not raised in the trial court, so it was not preserved for our review. *Overton v. Overton*, No. 14-09-00865-CV, 2011 Tex. App. LEXIS 893, at *8 (Tex. App.—Houston Feb. 8, 2011, no pet.). Even if it had been raised, Jones' monthly support obligations continued. He fails to cite any authority that an agreement on current child support arrearages prevents future enforcement on past or new amounts. TEX. R. APP. P. 38.1(i). Jones did not timely contest the Order on Arrears. Issue 5 is overruled.

Issues Seven and Thirteen: In these issues, Jones complains about the breadth of the turnover order. Jones' seventh issue is a complaint that the trial court erred by allegedly requiring him to turn over to the receiver the rights he possesses as a parent, including the right to sue to enforce orders regarding access to the child. We find that because Jones' pending action to modify is not "property," his action is not subject to turnover. The Texas turnover statute allows a judgment creditor to apply to a court for assistance in satisfying a judgment through reaching a judgment debtor's *property*. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (emphasis added). Jones' rights to a relationship with his child do not pertain to his property. We do not interpret any portion of the turnover order to divest Jones of parental rights or vest such rights in the receiver. Accordingly, we overrule issue seven.

In issue thirteen, Jones complains that the turnover order impermissibly requires that he personally appear at the receiver's office each month. The original turnover order, paragraph h, required Jones to "appear at the office of the court-appointed Receiver or at such other address as may later be provided to Judgment Debtor" on a monthly basis "in any month in which Judgment Debtor receives any non-exempt property, together with

15

any documents or records relating to such property." After Jones filed his post-turnover motion, however, paragraph h was amended. In its current form, the paragraph does not specify that Jones must deliver any property to the receiver, only "documents or records relating to such property."[15] Further relevant here, the paragraph omits any requirement for Jones to personally appear before the receiver. Given this language, we overrule Appellant's thirteenth issue.

Issue Eight: In his eighth issue, Jones complains the trial court erred in awarding turnover order attorney's fees allegedly in violation of the parties' Rule 11 agreement regarding the hearing on discovery-related issues.[16] In his motion to vacate the Turnover Order, filed February 1, 2023, Jones asserted via a single statement that "[t]he hearing on [Uribe's] application for turnover relief was held in violation of the parties' Rule 11 agreement." Jones never argued that the trial court could not award fees due to Uribe seeking turnover relief in alleged violation of the agreement. Under Texas Rule of Civil Procedure 33.1(a), preserving the complaint for appeal required Jones "to move the trial court to enforce the Rule 11 agreement 'with sufficient specificity' and to obtain a ruling on that motion" to preserve error for appeal. *Tex. Tas Sols., LLC v. City of El Paso*, 593 S.W.3d 903, 912–13 (Tex. App.—El Paso 2019, no pet.) (quoting *Rammah v. Abdelijaber*, 235 S.W.3d 269, 273 (Tex. App.—Dallas 2007, no pet.)). He did not provide the court with sufficient notice or obtain a ruling on the issue of which he now complains.

---

[15] The phrase ". . . at the address provided by Receiver, on Friday next following the entry of this Order and on the second Friday of each month thereafter in any month in which Judgment Debtor receives any non-exempt property, or as deemed necessary by Receiver . . ." specifies to whom Jones must deliver property and when it must be delivered.

[16] Jones does not complain that the agreement prohibited the court from signing the turnover order.

16

Even if it could be said that the issue was preserved, however, the letter containing the Rule 11 agreement specifically related to production of documents related a motion to modify child support or the parent-child relationship. Nothing in the agreement suggests a reading that it was intended to apply to all future proceedings without regard to their subject matter.[17] *See Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet. denied) (rule 11 agreements are interpreted as contracts). In light of this record, we cannot say the trial court abused its discretion by not conditioning an award of attorney's fees upon compliance with the Rule 11 agreement. *See In re J.P.*, No. 13-18-00648, 2020 Tex. App. LEXIS 129, at *9 (Tex. App.—Corpus Christi-Edinburg Jan. 9, 2020, pet. denied) (mem. op.) (enforcement of Rule 11 agreements are reviewed for an abuse of discretion).

Issues Nine and Ten:[18] Jones argues there is insufficient evidence to support the turnover order's award of attorney's fees for $36,750, plus conditional appellate and bankruptcy fees. An appellate court reviews an award of attorney's fees for abused discretion. *In re R.E.S.*, 482 S.W.3d 584, 586 (Tex. App.—San Antonio 2015, no pet.) (citing *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1986)). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to guiding rules or principles. *Id.* (citing *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011)). In this case, the trial court did not state its reasons for awarding attorney's fees, so we shall affirm if there is any valid legal

---

[17] Uribe's application for turnover relief was not filed until January 2023, nearly a year and one-half later.

[18] Like the reasons expressed above regarding the validity of the Order on Arrears, we overrule Jones' third and fourth issues pertaining to the turnover order's awards of fees and conditional fees to Uribe rather than the Attorney General. Uribe possessed a valid judgment against Jones when the turnover order was signed, so there is an independent basis for Uribe to pursue enforcement efforts in her own name.

basis to do so. *See Garcia v. Ranft-Garcia*, No. 04-22-00415-CV, 2024 Tex. App. LEXIS 1958, at *13 (Tex. App.—San Antonio Mar. 20, 2024, no pet.).

A claimant seeking attorney's fees must prove that they are both reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Sufficient evidence includes details of (1) the particular services performed, (2) who performed them, (3) when they were performed, (4) the reasonable time required, and (5) the reasonable hourly rate for each person performing them. *Id.* Both of Uribe's attorneys testified to their qualifications and provided a chart describing their legal fees from January 18 to April 19, 2023. The chart showed their hourly rates, services performed, dates of service, duration, and hourly rates. Both attorneys opined that the fees were reasonable and necessary. Based on this evidence, we conclude there exists an evidentiary basis sufficient to support the trial court's award of fees. *See Garcia v. Ranft-Garcia*, No. 04-22-00415-CV, 2024 Tex. App. LEXIS 1958, at *15–16 (Tex. App.—San Antonio Mar. 20, 2024, no pet.); *In re C.L.C.*, No. 04-11-00920-CV, 2013 Tex. App. LEXIS 2864, at *16–17 (Tex. App.—San Antonio Mar. 20, 2013, no pet.).[19]

Regarding contingent attorney's fees, the trial court awarded these fees to be awarded if Jones unsuccessfully appeals to this Court ($25,000), the Supreme Court ($20,000), and other contingencies. The trial court also awarded $10,000 if Jones files a petition for bankruptcy. Contingent fees are not subject to a lodestar analysis because they are not yet incurred. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354–55 (Tex. 2020). Uribe's attorneys testified about their estimation of reasonable contingent

---

[19] Jones participated in cross-examination but did not offer witnesses or exhibits to propose a different amount of fees.

appellate fees, and this evidence was sufficient to support the trial court's basis for estimating contingent fees.

Jones also alleges insufficient evidence for the conditional award of bankruptcy fees. Uribe's attorneys testified to the reasonableness of their rates, included their curriculum vitae as exhibits, and opined that the estimated fees were reasonable and necessary in pursuing child support obligations if Jones filed for bankruptcy protection.[20] Having reviewed the record, we conclude Uribe's evidence had a factual basis sufficient to support the trial court's award of contingent appellate and bankruptcy fees. *See Yowell*, 620 S.W.3d at 355. Issues nine and ten are overruled.

Issue Eleven: Jones' eleventh issue is overruled as we have addressed the evidence and law supporting (or not supporting) each award of attorney's fees, as well as their characterization.

Issue Twelve: Jones next requests that if we do not reverse the trial court and render a take-nothing judgment we should decide issues likely to recur on remand so the parties can avoid a second appeal. We decline to do so; those opinions would be advisory. *See City of San Antonio v. Hays St. Bridge Restoration Grp.*, No. 04-14-00886-CV, 2019 Tex. App. LEXIS 6058, at *3 (Tex. App.—San Antonio July 17, 2019, no pet.) (*citing Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998)). Issue twelve is overruled.

---

[20] Jones candidly admits in his brief that the Fourth Court of Appeals has held that contingent bankruptcy fees are recoverable by a judgment creditor in the event of a successful action for the recovery of some awards of unpaid child support, but argues the case was "wrongly decided because such an award is not authorized by statute under the American Rule, and contrary to federal and state and federal public policy." This issue was not put before the trial court and is improper for appellate review.

<u>Additional Observations</u>

A few final comments are necessary regarding attorney conduct and the dispute over fees which permeates this appeal. The record suggests that Jones has undertaken multiple steps to evade service and avoid his child support obligations. A parent, like Jones, who responds when only in his best interest understandably frustrates any child support obligee who is attempting to ensure he complies with basic court-ordered obligations intended for the child's best interests. Attorney fees are certainly justified when necessary to highlight a recalcitrant parent's acts and ask for assistance.

At the same time, however, much of the sympathy the Court may have initially felt for Uribe diminished in light of her counsel's questionable procedural maneuvers. These appear to have been taken with an intent to avoid providing notice to Jones: sidestepping Chapter 157's notice and procedures, misrepresenting the consequence of not responding, concealing a request for fees, and engaging in *ex parte* contact with the trial court to present proposed orders, among other things. Moreover, other concerning conduct continued through Jones' motion to vacate, with Uribe's attorney repeatedly interrupting the court, berating opposing counsel about the finality of the Order on Arrears, making numerous speaking objections, and whispering an answer into his testifying co-counsel's ear. The trial court, after one hearing (during which the attorneys could not even agree on who should speak first), remarked that counsel had "worn my patience out today . . . ." The conduct tested the patience of this Court, as well.

As this case proceeds, we hope the attorneys will remember their role is not merely to act as hired guns, but to ensure that justice is done.[21] While attorneys will at times vigorously disagree with one another and with judges, Texas courts expect attorneys to adhere to the Texas Lawyers' Creed, an aspirational standard enunciated by the State's two highest courts nearly 35 years ago. In particular, we direct attention to section 3, recommending conduct for lawyers dealing with one another. Per the preamble:

A lawyer owes to opposing counsel, in the conduct of legal transactions and the pursuit of litigation, courtesy, candor, cooperation, and scrupulous observance of all agreements and mutual understandings. Ill feelings between clients shall not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel. A lawyer shall not engage in unprofessional conduct in retaliation against other unprofessional conduct.

We encourage all counsel in this case to reflect on the meaning of this Creed in their practice and to conform their conduct accordingly.

## Conclusion

We vacate the portion of the Order on Arrears that names the Sinkin Law Firm as a creditor of Jones and that awards attorney's fees to the firm. Because the court did not grant Uribe any right to recover fees, the Court orders that Uribe take nothing for fees and contingent fees in the Order on Arrears.

---

[21] See "Preamble: A Lawyer's Responsibilities," Texas Disciplinary Rules of Professional Conduct:

A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Lawyers, as guardians of the law, play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standards of ethical conduct.

Regarding the supplemental Order of Turnover, we reverse the portion of the order that characterizes attorney's fees and conditional fees to be paid to Uribe and the Sinkin Law Firm as child support.  Further, given the supplemental order's language omitting a requirement that Jones turn-over exempt property, except wages, and the reasons for the Court's reversal, described above, we hold that Jones' appeal in this Court is successful, and that Uribe is therefore not entitled to recover conditional appellate fees per the terms of the turnover order.  We otherwise affirm the order of attorney's fees.

We overrule Appellant's remaining issues.


Lawrence M. Doss
Justice